# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION (CLEVELAND)

| | | |
|---|---|---|
| SABRINA C. WHITSETTE, | ) | CASE NO. 1:18-CV-01730 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | **DEFENDANT'S MEMORANDUM IN** |
| | ) | **OPPOSITION TO PLAINTIFF'S** |
| MARC JACOBS INTERNATIONAL, | ) | **MOTION FOR REMAND AND IN** |
| LLC, | ) | **SUPPORT OF ITS MOTION TO** |
| | ) | **DISMISS UNDER FED. R. CIV. P.** |
| Defendant. | ) | **12(B)(1) FOR WANT OF STANDING** |

Plaintiff Sabrina Whitsette ("**Whitsette**" or "**Plaintiff**") initiated this action in the Court of Common Pleas, in Cuyahoga County, Ohio, on June 21, 2018 (the "**State Court Action**"), seeking only an injunction under the Ohio Consumer Sales Practices Act (the **"Act"**) (R.C.1345.09(D)).  She seeks this relief to remedy an allegedly false claim that the Shameless Youthful Look 24-Hour Foundation makeup (the "**Product"**) of Defendant Marc Jacobs International, LLC ("**MJI**" or "**Defendant**") has been clinically tested to last 24 hours on a consumer's skin (the "**24 Hour Claim**").[1]  Whitsette does not seek damages, nor has she filed this as a class action.[2]  Because there is complete diversity and compliance with the requested injunction would exceed $75,000, MJI timely removed to this Court on July 25, 2018.  Whitsette now seeks remand of her action to state court.

Whitsette does not dispute, for purposes of her motion for remand, that it would cost MJI more than $75,000 to comply with the requested injunction, which would entail the repackaging

---

[1] MJI vehemently denies that it made any false claims.

[2] Whitsette purports to reserve her right to plead this case as a class action for damages.  (Cmplt. ¶ 38.)

of the Product and changes in advertising to remove the words "24-Hour Longwear," "24-Hour Foundation," and "Clinically Tested for 24-Hour Longwear" or, alternatively, to cease marketing the Product in Ohio.

Rather, she asserts two bases for her motion for remand: (1) the $75,000 cost of compliance does not satisfy the jurisdictional amount for diversity jurisdiction, and (2) the Court does not possess subject matter jurisdiction under Article III.  As to the first argument, there is no doubt that the jurisdictional amount is satisfied.  As to the second, Whitsette's claim of no standing to bring this claim proves too much, as it dooms her claim altogether, both in this Court and in the Ohio state court.  Accordingly, if Ms. Whitsette's claim is as she says it is, her complaint must not be remanded, but dismissed.

A.     **The $75,000 Jurisdictional Minimum Is Satisfied.**

Whitsette concedes, for purposes of this motion, that MJI's cost to comply with the requested injunction would exceed $75,000.  She also acknowledges that the Sixth Circuit has not made a final and definitive ruling whether the amount in controversy is to be determined only from the viewpoint of the plaintiff or from the viewpoint of either party.  Instead, relying on an out-of-Circuit district court decision and an inapposite class action case, Whitsette claims that using the cost of compliance from the defendant's viewpoint would violate the anti-aggregation rule.

As a threshold matter, this Court has previously found that the defendant's cost of compliance with an injunction can satisfy the amount in controversy requirement in non-class action cases.  In *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.,* 606 F. Supp. 2d 698, 710 (N.D. Ohio 2009), *vacated on other grounds,* 621 F.3d 554 (6th Cir. 2010), this Court observed that "[t]he 'costs of complying with an injunction . . . may establish the amount

in controversy.'" (citing *Everett v. Verizon Wireless, Inc.,* 460 F.3d 818, 829 (6th Cir. 2006)). After acknowledging that the Sixth Circuit had not finally decided whether to apply the plaintiff's viewpoint rule or the either party's viewpoint rule, this Court observed:

> In some ways [the either viewpoint rule] seems to be the desirable rule, since the purpose of a jurisdictional amount in controversy requirement – to keep trivial cases away from the federal court system – is satisfied when a case is worth a large sum of money to either party.

606 F. Supp. 2d at 711 (quoting 14B Wright & Miller, Fed. Prac. & Proc. § 3703). This Court therefore held that "[w]hen a removing defendant invokes federal jurisdiction, this Court will apply the either-viewpoint rule." *Id.* On appeal, the Sixth Circuit agreed that the "significant remedial measures or complete destruction of the properties [the plaintiff] seeks" would exceed the $75,000 amount in controversy and left this Court's holding undisturbed, concluding that its exercise of subject matter jurisdiction was proper. *Cleveland Housing Renewal Project*, 621 F.3d at 560–61.

Faced with this Court's application of the either viewpoint rule, Whitsette claims that viewing the cost of compliance from the defendant's viewpoint would nevertheless violate the anti-aggregation rule. This provides that separate and distinct claims of two or more plaintiffs cannot be aggregated to satisfy the jurisdictional amount requirement. As a threshold matter, however, the federal jurisdictional minimum is not met in this case by aggregating the separate and distinct claims of two or more plaintiffs, as there is only one plaintiff. Instead, it is being met by valuing the cost of compliance, and related amounts, that would be incurred by the defendant.

The anti-aggregation rule, moreover, has no application to this case. Whitsette has not filed a class action lawsuit or pled the case on behalf of multiple parties. Nor has she sought damages at all. Rather, she has filed for an injunction under R.C. 1345.09(D), which gives a

consumer a ***private cause of action*** as follows: "Any consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates this chapter." That Whitsette has assumed the role as a private attorney general does not change this result. She cites no legal authority to support her argument that a private cause of action under R.C. 1345.09(D) is anything other than an individual action or somehow converts her claim into one on behalf of all citizens of Ohio. To the contrary, "an injunction under [R.C. 1345.09(D)] seeks to do justice primarily to the parties rather than the general public." *Mick v. Level Propane Gases, Inc.,* 168 F. Supp. 2d 804, 811 (S.D. Ohio 2001).

In short, Whitsette's anti-aggregation argument necessarily fails since, by law, Whitsette represents only herself, and MJI is aggregating nothing. Not surprisingly, Whitsette's argument accordingly relies on two inapplicable decisions. First, Whitsette invokes a district court opinion (which she miscites[3]) from the District of Columbia, *Organic Consumers Ass'n v. R.C. Bigelow, Inc.,* 18-cv-82, 2018 WL 3213304 (D.C.C. June 29, 2018). There, the plaintiff, a non-profit, public interest organization, brought an action under a provision of the District of Columbia Consumer Protection Procedures Act (the "**CPPA**") that permitted it, as a non-profit, public interest organization, to file on behalf of the general public. *Id.* at *2. The court first found that the cost-to-the defendant test was an appropriate measure of the amount in controversy in the D.C. Circuit. *Id.* at *3. It then found that the anti-aggregation rule applied because the plaintiff was filing on behalf of the general public under the CPPA. *Id.* at *6 (citing *Animal League Defense Fund v. Hormel Foods Corp.,* 249 F. Supp. 3d 53, 60 (D.D.C. 2016) ("[I]n the context of cases brought under the [ ]CPPA on behalf of the general public seeking injunctive relief[,]

---

[3] Whitsette incorrectly claims that the *R.C. Bigelow* case was decided by the Eleventh Circuit. It was decided by the District Court for the District of Columbia

4

[courts] have determined that considering the total cost to the [d]efendant of complying with that relief would violate the non-aggregation principle.") (emphasis in original)).

Here, in contrast, Whitsette has filed a private right of action on behalf of herself and herself alone as an individual person. Unlike in *R.C. Bigelow,* she is not empowered by statute to bring an action on behalf of the general public. Instead, R.C. 1345.09(E) of the Act permits the attorney general of Ohio to intervene in this private cause of action under R.C. 1345.09(D) expressly for that purpose:

> When a consumer commences *an individual action* for a declaratory judgment or an injunction or a class action under this section, the clerk of court shall immediately mail a copy of the complaint to the attorney general. Upon timely application, the attorney general may be permitted to intervene in any private action or appeal pending under this section.

(Emphasis added). *R.C. Bigelow* has no relevance here.

Second, Whitsette misplaces her reliance on *Siding and Insulation Company, Inc. v. Acuity Mutual Insurance Company*, 754 F.3d 367 (6th Cir. 2014). In that case, unlike here, the plaintiff filed a class action lawsuit, and the Court found that application of the either-viewpoint in the insurance coverage dispute would "provide an end run" around the anti-aggregation rule. *Id.* at 372. The Court observed that the Ninth Circuit, an either-viewpoint jurisdiction, declined to extend the either-viewpoint rule to class action lawsuits for this very reason. *Id.* But Whitsette has not filed a class action lawsuit and disclaims any class relief. She seeks only an individual injunction. Thus, *Siding and Insulation Company* is irrelevant.

Accordingly, the anti-aggregation rule does not apply. Because Whitsette has conceded that the cost of compliance with the injunction she seeks would exceed $75,000, the jurisdictional amount in controversy has been satisfied. Thus, this case has been properly removed and the requirements for diversity jurisdiction have been established.

**B.     Whitsette's Standing Argument Requires Dismissal Under Rule 12(b)(1), Not Remand, Because She Has No Standing To Bring Her Claim In State Court.**

Whitsette also challenges this Court's subject matter jurisdiction on the ground that her claim does not satisfy the Article III case or controversy requirement.  She asserts she will not purchase the product again and therefore will not suffer the future injury necessary to establish Article III standing.  She then claims that she has assumed the role of private attorney general under the Act and therefore has standing in state, but not federal, court, relying on this Court's decisions in *Graiser v. Visionworks of Am, Inc.*, 1:14-cv-01641, 2015 WL 248003 (N. D. Ohio Jan. 20, 2015), and *Neuman v. L'Oréal USA S/D, Inc.,* 1:14-cv-01615, 2014 WL 5149288 (N.D. Ohio Oct. 14, 2014).

Once again Whitsette's contention is based on a fundamental legal error, this time fatal to her case.  If what she says is true, she has no viable claim at all under Ohio law, whether the case proceeds in this Court or Ohio state court.  Accordingly, this Court has the authority to, and should, dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**1.     This Court has the authority to determine whether Whitsette has standing under Ohio law to seek an injunction.**

Whitsette argues that the case must be remanded because she has no Article III standing. As a threshold matter, however, the Court need not reach the question whether Whitsette has Article III standing, which therefore means the case must necessarily be remanded, if she has no standing under Ohio state law.  Instead, under Sixth Circuit principles, this Court can and should dismiss her complaint entirely under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

The Sixth Circuit has made clear that the district courts have the power to determine whether a plaintiff has standing under state law to assert a state law claim regardless whether there is Article III standing.  "'[W]hile it is true that Article III standing is the threshold question

6

in every federal case [citation omitted],' it is well established that the law 'does not dictate a sequencing of jurisdictional issues' and that 'a federal court [may] choose among threshold grounds for denying audience to a case on the merits.'" *Aarti Hospitality, LLC v. City of Grove City, Ohio*, 350 Fed. App'x 1, 6 (6th Cir. 2009) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999)); *see also Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007) ("Where both standing and subject matter jurisdiction are at issue . . . a court may inquire into either and, finding it lacking, dismiss the matter without reaching the other.").

This was precisely the issue raised in *Aarti*. There, the plaintiffs sought declaratory relief under Ohio's Declaratory Judgment Act (the "**ODJA**"). After the defendants removed the action, they filed a motion for judgment on the pleadings on the ground that the plaintiffs had no standing under the ODJA. The district court granted the motion without considering whether the plaintiffs had Article III standing. *Aarti Hosp., LLC v. City of Grove City, Ohio*, 486 F. Supp. 2d 696, 703 (S.D. Ohio 2007), *aff'd*, 350 F. App'x 1 (6th Cir. 2009). Affirming dismissal of the claims because the plaintiffs had no standing under Ohio state law, the Sixth Circuit found:

> [B]ecause plaintiffs' right to relief on these state law claims arises solely from an Ohio statute, the crucial inquiry is whether Ohio law, not federal law, authorizes the remedy sought. The law is well-settled that a federal court exercising supplemental or diversity subject matter jurisdiction over state law claims must apply state substantive law to those claims.

350 F. App'x at 6 (citations omitted). The Sixth Circuit thereby confirmed that the district court need not first address the issue of Article III standing in dismissing a complaint when the plaintiff has no standing under state law. *Accord, Westborough Mall, Inc. v. City of Cape Giraudeau, Mo.*, 693 F.2d 733, 747 (8th Cir. 1982) (holding, without addressing Article III standing, that the plaintiffs' allegation of "mere competitive disadvantage" resulting from ordinances "does not give rise to standing" under Missouri law).

7

**2.     Whitsette has no standing to seek a prospective injunction under Ohio law.**

Whitsette claims that, although she has no standing in federal court, she does have a viable state court claim to seek a prospective injunction under the Act.  This is the very argument Whitsette's counsel made in *Graiser,* as he reminds the Court.  What he does not disclose, however, is that, upon remand, the Ohio state court granted Visionworks' motion for judgment on the pleadings and held that the plaintiff had no standing, even in the Ohio state court, to bring a claim for a prospective injunction under R.C. 1345.09(D).  *Graiser v. Visionworks of America, Inc.,* 14-CV-828880, 2015 WL 13238576 (Cuyahoga C.P. April 10, 2015).

The state court first observed that the test for standing under Ohio law and Article III are the same: "under both federal law and state law standing requires an injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Id.* at *2 (citing *Lujan v. Defenders v. Wildlife,* 504 U.S. 555, 560–61 (1992), *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983), and *Moore v. City of Middleton,* 133 Ohio St. 3d 55, 60, 973 N.E.2d 977, 982 (2012) ("[T]hree factors – injury, causation, and redressability – constitute the irreducible constitutional minimum of standing.")).

Ohio courts hold that when seeking an injunction under a statute that – like R.C. 1345 (D) – does not contain specific standards for granting an injunction, a plaintiff must establish the traditional elements for injunctive relief, including irreparable harm.  *Graiser,* 2015 WL 13238576, at *3; *accord State ex rel. Jones v. Hamilton Cty. Bd. Of Comm'rs,* 124 Ohio App. 3d 184, 189, 705 N.E.2d 1247 (1st Dist. 1997).  Like the plaintiff in *Graiser,* Whitsette does not allege that, absent the requested injunction, she would suffer irreparable harm.  This is fatal for her claim, as it deprives her of standing to bring it.

Such was the case in *Graiser,* which Whitsette has characterized as "substantially identical" in her motion for remand. (Mot. at 4.) The state court found that, in seeking a prospective injunction, the plaintiff could not meet the "redressability factor" necessary to create standing under state law. "[A] party has standing to request injunctive relief when he has a 'personal stake' in the granting of the injunction, meaning that he faces an immediate and impending threat of irreparable injury." *Graiser,* 2015 WL 13238576, at *2 (internal quotations and citation omitted). The state court was persuaded that "the absence of the 'redressability' factor and Plaintiff's 'personal stake' in the granting of the injunction, or stated differently, the conclusion that Plaintiff's requested injunction will not remedy any cognizable future harm to him, that defeats his standing to pursue the injunction." *Id.* (internal quotations and citation omitted).

Whitsette argues that she nevertheless has state, but not federal, court standing because she has assumed the role of private attorney general under R.C. 1345.09(D). As discussed above, R.C. 1345.09(D) does not confer on a private litigant the right to seek relief on behalf of the general public. *Mick,* 168 F. Supp. 2d at 811 ("[A]n injunction [under R.C. 1345.09(D)] seeks to do justice primarily to the parties rather than the general public."); *ProgressOhio.org, Inc. v. JobsOhio,* 139 Ohio St. 3d 520, 522 (Ohio 2014) (for a cause to be justiciable under the state constitution, it must present issues that have a direct and immediate impact on the plaintiffs).

Upon remand in *Graiser,* the plaintiff made the same argument that Whitsette asserts here – that, because he was seeking a statutory injunction under R.C. 1345.09(D), he was not required to allege or show irreparable harm. The court rejected this argument. It found insufficient the plaintiff's allegation that the public would suffer significant harm if it continued to be subjected

9

to the defendant's allegedly deceptive advertising, holding, "these averments do not amount to allegations of irreparable harm," and dismissed the injunction claim for lack of standing. *Graiser,* 2015 WL 13238576, at *3.

Whitsette has in fact pled and argued herself out of any case at all. Because Whitsette has no standing under Ohio law to bring her claim for an injunction, this Court should dismiss her complaint.

## CONCLUSION

For the reasons stated herein, MJI respectfully requests that this Court (1) deny Whitsette's motion to remand because the case was properly removed, and (2) dismiss the complaint under Rule 12(b)(1) of the Federal Rule of Civil Procedure on the ground that Whitsette has pled an injunction claim for which she has no standing under Ohio law.

Respectfully submitted,

 */s/ Steven J. Miller*
STEVEN J. MILLER (0014293)
DAVID A. KUNSELMAN (0073980)
MILLER GOLER FAEGES LAPINE LLP
1301 East 9th Street, Suite 2700
Cleveland, OH  44114-1835
Tel: (216) 696-3366 ⬥ Fax: (216) 363-5835
miller@MGFL.law
kunselman@MGFL.law

ROBERT E. SHAPIRO (Admitted *Pro Hac Vice*)
HANNAH Y. JUROWICZ (Admitted *Pro Hac Vice*)
BARACK FERRAZZANO KIRSCHBAUM &
   NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, IL 60606
Tel: (312) 984-3100 ⬥ Fax: (312) 984-3150
rob.shapiro@bfkn.com
hannah.jurowicz@bfkn.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2018, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system.

                                                */s/ Steven J. Miller*
                                                STEVEN J. MILLER (0014293)
                                                One of the Attorneys for Defendant